UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:25-CV-00428-GNS-RSE

SHAMEKA L. O'NEIL                                                                                          PLAINTIFF

v.

ALLY FINANCIAL INC.                                                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motions for Summary Judgment (DN 17, 18, 24)[1] and Defendant's Cross Motion for Summary Judgment (DN 28). The motions are ripe for adjudication.

### I.     STATEMENT OF FACTS AND CLAIMS

In 2021, Plaintiff Shameka L. O'Neil ("O'Neil")[2] purchased a used 2017 Jaguar XE ("the Jaguar") from a car dealership in Georgia ("the Dealer"). (Compl. ¶ 8, DN 1; Compl. Ex.1, at 3,

---

[1] As Defendant notes, Plaintiff's Second Motion for Summary Judgment (DN 18) is identical to her Motion for Summary Judgment (DN 17) except that the date the loan originated was changed from July 24, 2023, to February 28, 2021. (Pl.'s Mot. Summ. J. 2, DN 17; Pl.'s 2d Mot. Summ. J. 2, DN 18). The Court construes this as an amended motion and will therefore consider the second motion and deny the first as moot. Regarding Plaintiff's Motion for Summary Judgment (DN 24), as Defendant also observes, the first page appears to be part of a motion for summary judgment, and the second is part of Plaintiff's motion for leave to file electronically. A Proposed Order (DN 24-1) is attached. Defendant assumes that Plaintiff did not intend this filing to replace her earlier motions for summary judgment. (Def.'s Mem. Supp. Cross Mot. Summ. J. 7 n.3, DN 28-1). Plaintiff does not contradict this assumption. The Court will construe this filing as responding to the clerk's Notice of Deficiency (DN 19), which informed Plaintiff that her motions for summary judgment were missing proposed orders.

[2] O'Neil, an attorney, is representing herself *pro se*. *See Find a Lawyer*, Kentucky Bar Association, https://kybar.org/For-Public/Find-a-Lawyer [https://perma.cc/8N8T-RYXP] (search "Shameka Lynn O'Neil").

1

DN 1-1). O'Neil and the Dealer executed a Retail Installment Sale Contract ("RISC") to finance her purchase. (Compl. Ex. 1, at 3). The total amount financed was $25,879.83 at an annual percentage rate ("APR") of 14.19%. (Compl. Ex. 1, at 3). The RISC requires O'Neil to pay $541.73 each month for 72 months, a total of $39,004.56. (Compl. Ex. 1, at 3). The Dealer assigned its interest in the RISC to Defendant Ally Bank[3] ("Ally"). (Lewis Aff. ¶¶ 8, 11, DN 28-2).

Four years later, O'Neil still owes Ally approximately $17,000, and the Jaguar has "stopped functioning properly" and is now only worth approximately $6,000. (Compl. ¶¶ 18, 19). Because O'Neil is unemployed, she asserts she cannot afford the necessary repairs or loan payments. (Compl. ¶ 22). O'Neil filed suit, alleging that Ally engaged in unfair and predatory lending practices. (Compl. ¶ 2). She claims Ally violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the Kentucky Consumer Protection Act ("KCPA"), KRS 367.110 et seq., and that the RISC was unconscionable. (Compl. ¶¶ 25-44). Both parties move for summary judgment. (Pl.'s 2d Mot. Summ. J.; Def.'s Cross Mot. Summ. J., DN 28).

## II.    JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331. In addition, the Court has supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(a).

## III.    STANDARD OF REVIEW

---

[3] Ally Bank is a wholly owned subsidiary of Ally Financial, Inc. (Def.'s Mem. Supp. Cross Mot. Summ. J. 1). Ally Bank contends that it, not Ally Financial, Inc., is the correct party. (Def.'s Mem. Supp. Cross Mot. Summ. J. 1).

2

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying the evidence demonstrating an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the nonmoving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable for the nonmoving party, the nonmoving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the nonmoving party must present facts proving that a genuine factual dispute exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

### IV.   DISCUSSION

#### A.   TILA

O'Neil claims her loan agreement set forth in the RISC violates the TILA. (Compl. ¶¶ 25-30). Most actions under the TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Indeed, this statute of limitations applies to the only specific subsection O'Neil cites, 15 U.S.C. § 1632(a). (Pl.'s 2d Mot. Summ. J. 2). O'Neil's claim is therefore barred: O'Neil signed the RISC in 2021, but did not file this action until July

3

10, 2025. (Pl.'s 2d Mot. Summ. J. 2; Compl. ¶ 8). It is unnecessary for this Court to consider the merits of her claim.

### B.  KCPA

Ally asserts that Georgia—not Kentucky—law governs the loan agreement. (Def.'s Mem. Supp. Cross Mot. Summ. J. 13-14). Indeed, O'Neil bought the Jaguar in Georgia, while she was living in Georgia, and the RISC's choice of law provision provides that it is governed by federal and Georgia law. (Compl. Ex. 1, at 3, 6). Clearly, Georgia has the "most significant relationship" with the dispute. *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 574 (6th Cir. 2019) ("A court determining which state has the most significant relationship must consider the 'the place or places of negotiating and contracting; the place of performance; the location of the contract's subject matter; and the domicile, residence, place of incorporation and place of business of the parties.'" (quoting *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky. 2013)). Thus, the RISC is governed by Georgia law, and the KCPA is inapplicable.

Even assuming the KCPA applies, it is governed by a two-year statute of limitations. KRS 367.220(5); *Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 766 (E.D. Ky. 2019) ("Plaintiffs allege a KCPA claim pursuant to [KRS] 367.170. Accordingly, based upon well-established precedent, the two-year statute of limitations set forth in [KRS] 367.220(5) applies to Plaintiffs' KCPA claim." (internal citation omitted)). O'Neil claims that Ally's conduct in the creation of the RISC violates the KCPA. (Compl. ¶¶ 33-34). Again, O'Neil entered into the RISC in 2021, but did not file this action until July 10, 2025. (Pl.'s 2d Mot. Summ. J. 2; Compl. ¶ 8). Accordingly, her claim is barred by the KCPA's statute of limitations, and it is unnecessary for the Court to consider the merits of her claim.

### C.  Unconscionability

Under Georgia law:

> An unconscionable contract is "abhorrent to good morals and conscience" and is an agreement in which "one of the parties takes a fraudulent advantage of another." But an agreement is not unconscionable merely because it appears to favor one party over another or may lead to hardship. Indeed, we have repeatedly emphasized that parties should "be entitled to contract on their own terms without the courts saving one side or another from the effects of a bad bargain."

*Smith v. Adventure Air Sports Kennesaw, LLC*, 849 S.E.2d 738, 744 (Ga. Ct. App. 2020) (internal citations omitted).[4] "[U]nconscionability is determined based on the circumstances existing at the time the contract was made." *William J. Cooney, P.C. v. Rowland*, 524 S.E.2d 730, 733 (Ga. Ct. App. 1999) (citation omitted). Courts "examine unconscionability from the perspective of *substantive* unconscionability, which 'looks to the contractual terms themselves,' and *procedural* unconscionability, which considers the 'process of making the contract.'" *Innovative Images, LLC v. Summerville*, 848 S.E.2d 75, 83 (Ga. 2020) (citation omitted).

When determining whether a contract is substantively unconscionable, courts consider "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 876 (11th Cir. 2005) (quoting *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 771-72 (Ga. 1996)). O'Neil argues that the RISC is unconscionable because: (1) the APR is excessive and not justified by her credit risk; (2) the loan structure created and maintained negative equity throughout most of the loan term; (3) the total cost of the loan is

---

[4] Though Georgia law applies, the RISC is not unconscionable under Kentucky law, either. *See Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 342 (Ky. App. 2001) ("An unconscionable contract has been characterized as 'one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.'" (citation omitted)).

5

disproportionate to the depreciated cost of the vehicle; (4) Ally's offered loan modification didn't meaningfully address the issues with the loan; and (5) the loan is an unreasonable financial burden because it requires her to pay more than half of her monthly income. (Pl.'s 2d Mot. Summ. J. 5). Each argument will be addressed in turn.

O'Neil cites no evidence in her brief to support her first argument. It is O'Neil's "job to point to the evidence with specificity and particularity in the relevant brief rather than just dropping a pile of paper on the district judge's desk and expecting him to sort it out." *Wimbush v. Wyeth*, 619 F.3d 632, 639 n.4 (6th Cir. 2010). "[I]t is not the district court's duty 'to search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480-81 (6th Cir. 1989)). Instead, O'Neil "must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor." *Id.* (citing *Street*, 886 F.2d at 1476-77). Even if the Court were to consider evidence attached to her complaint, she does not provide evidence of what her credit risk was like at the time she financed the Jaguar—the credit scores and reports she provides were generated years later. (Compl. Ex. 1, at 114, 117, 149, 151-56, 58).

Regarding the second and third claims, Ally argues that O'Neil relies on inadmissible hearsay—Kelly Bluebook information—to establish the fair market value of the Jaguar. (Def.'s Mem. Supp. Cross Mot. Summ. J. 24; Pl.'s 2d Mot. Summ. J. 2; Compl. Ex. 1, at 40-49). Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). "At the summary-judgment stage, '[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence,' and 'the substance must still comport with the rules of evidence, including the rules on hearsay.'" *Warren v. Hollingsworth Mgmt. Servs., LLC*, No. 22-1064, 2022 WL 18542504, at *2 (6th Cir.

Dec. 19, 2022) (first quoting Fed. R. Civ. P. 56(c)(2); then quoting *Shazor v. Pro. Transit Mgmt., Ltd.*, 744 F.3d 948, 960 (6th Cir. 2014)).  O'Neil does not carry her burden to demonstrate that this evidence is not hearsay or that the evidence may be presented in an admissible form at trial.  *See* Fed. R. Civ. P. 56(c)(2) advisory committee's notes ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."). Without admissible evidence showing the value of the Jaguar, O'Neil cannot show that there is severe negative equity or that the total cost of the loan is disproportionate to the depreciated value of the Jaguar—which is, in any case, irrelevant because unconscionability is determined by considering the circumstances at the time the contract was made.  *William J. Cooney, P.C.*, 524 S.E.2d at 733 (citation omitted).

Fourth, Ally's loan modification offers do not affect the unconscionability of the original loan agreement.  *See id.*

Fifth, the fact that agreeing to the RISC may have been a poor financial decision for O'Neil does not make the RISC unconscionable.  *See Smith*, 849 S.E.2d at 744.  O'Neil has provided no evidence regarding cheaper transportation alternatives or the lack thereof.

Thus, each of O'Neil's arguments fails, and she has failed to carry her burden to show that the loan agreement was substantively unconscionable.

Next, when determining whether a contract is procedurally unconscionable, courts consider factors such as "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *Mullis v. Speight Seed Farms, Inc.*, 505 S.E.2d 818, 820 (Ga. Ct. App. 1998).  O'Neil argues that Ally exploited her because:  (1) she was in a vulnerable financial position when she entered into

the loan; (2) she lacked financial sophistication and did not understand the implications of the loan terms; and (3) she had an urgent need for transportation to maintain employment.

The evidence in the record does not support O'Neil's claims. When O'Neill entered into the RISC, she was a licensed attorney. (Def.'s Mem. Supp. Cross Mot. Summ. J. 5). She has provided no evidence that this loan was the only reasonable financing option available or that the Jaguar was the only reasonable transportation option available to her. (*See* Pl.'s 2d Mot. Summ. J.). Moreover, the terms of the RISC were clear. (Compl. Ex. 1, at 3-14). There is no evidence that the Dealer—or Ally[5]—exploited or took advantage of O'Neill when forming the RISC.

Accordingly, there is also insufficient evidence to show that the RISC is procedurally unconscionable. Though O'Neil certainly faces real financial hardship because of the RISC, that does not make it unconscionable. Based on the evidence before the Court, no jury could find that the RISC is unconscionable. Ally is therefore entitled to summary judgment on this claim.

### IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motions for Summary Judgment (DN 17, 18, 24) are **DENIED** and Defendant's Cross Motion for Summary Judgment (DN 28) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Clerk shall strike this matter from the active docket.

cc:    Plaintiff, pro se
       Counsel of record

**Greg N. Stivers, Judge**
**United States District Court**
December 30, 2025

---

[5] The RISC was executed between O'Neil and the Dealer; Ally was not party to the RISC but was later assigned the Dealer's interest. (Def.'s Mem. Supp. Cross Mot. Summ. J. 21-22; Lewis Aff. ¶¶ 8, 11).